UNITED STATES DISTRICT COURT

NORTHERN DISTRICT COURT OF GEORGIA

| | |
|---|---|
| **DALVIS KNOX** ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| vs. ) | CASE |
| ) | NO. _____ |
| **SAMSUNG SDI AMERICA, Inc. et al,** ) | |
| **LIVING VAPOR, LLC, SAMSUNG** ) | |
| **FIRE & MARINE INSURANCE CO**, ) | |
| **JANE/JOHN DOE (1-5), and** ) | |
| **XYZ CORPORATION (1-5),** ) | |
|    Defendants. ) | |

**PLAINTIFF'S COMPLAINT FOR DAMAGES.**

COMES NOW Dalvis Knox, (hereinafter "Plaintiff"), by and through his undersigned counsel and hereby files this Complaint for Damages against **SAMSUNG SDI AMERICA, INC. et al; SAMSUNG FIRE & MARINE INSURANCE CO.; LIVING VAPOR, LLC; JANE/JOHN DOE (1-5)**, and **XYZ CORPORATION (1-5)** (hereinafter "Defendants") and shows this Honorable Court as follows:

**INTRODUCTION**

1.

Plaintiff purchased an electronic cigarette and related parts, including a Samsung 25R 18650 battery to his e-cigarette. The Defendants are the manufacturers, wholesalers, distributors, and retailers of the electronic cigarette and related parts. On December 26, 2022, Plaintiff was

driving in his vehicle when suddenly his e-cigarette and related parts exploded while inside of his coat pocket, causing the client to receive second degree burns.

2.

Electronic cigarettes, also known as e-cigarettes, are promoted as an alternative to traditional tobacco products, offering a smoke-free method of delivering nicotine through a vaporized solution. These devices are designed to replicate the experience of smoking while claiming to mitigate the health risks associated with tobacco use. Many e-cigarettes also feature a variety of non-nicotine flavor options, such as gummy bear, vanilla, and blueberry pancake, which enhance their consumer appeal. The use of e-cigarettes is referred to as "vaping," and individuals who use them are called "vapers." In this case, the Defendants are responsible not only for the specific component at issue—a Samsung-manufactured battery, but also for the design, manufacture, and marketing of a broad range of similar products that were used by Plaintiff.

3.

E-cigarette's function using three primary components: a tank or cartridge to hold liquid nicotine or other substances ("juices" or "e-liquids"), an atomizer that converts the liquid into vapor for inhalation, and a battery, typically a cylindrical lithium-ion type, that powers the device. The battery is essential, supplying the energy needed to heat a coil within the atomizer, which raises the liquid to its vaporization point. This heating process can generate significant temperatures, and the battery's performance must be carefully managed to avoid overheating or failure. E-cigarettes come in both closed systems, using pre-filled cartridges, and open systems, allowing manual refills. They are available in pen-style designs resembling traditional cigarettes and as mods—larger devices with higher capacities for liquid and vapor production, often requiring custom coil installation. The functionality and safety of the battery are critical, as its operation underpins the entire process of vapor generation.

## PARTIES

4.

Plaintiff Dalvis Knox, is an individual citizen of the State of Georgia, residing therein 628 Trees of Avalon Parkway, McDonough, Georgia, 30253,

5.

Defendants Living Vapor, LLC, was at all relevant times a Georgia Corporation with its principal place of business and headquarters at 556 Old Lake Lane, Dawsonville, GA, 30534, in Dawson County, within the Northern District of Georgia.

6.

Defendant SAMSUNG SDI AMERICA was at all relevant times a foreign profit corporation of unknown form located in South Korea, which does business in the State of Georgia.

7.

Defendant SAMSUNG FIRE & MARINE INSURANCE CO, LTD, Inc. was at all relevant times a foreign entity of unknown form located in Seoul, South Korea which does business in the State of Georgia.

8.

Plaintiff sues fictitious Defendants (s) XYZ Corporation (1-5) (hereinafter "Defendant XYZ (1-5)"), whose identities and whereabouts are currently unknown, are subject to the jurisdiction and venue of this Court, and, if applicable, will be named and served with Summons and Complaint once their identities are revealed. Plaintiff will seek leave to amend this Complaint if necessary to reflect the true names and capacities of such fictitious Defendants when ascertained.

Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants are negligent or responsible in some manner for the events herein alleged.

9.

Plaintiff is informed and believes and on that basis alleges that at all times mentioned herein the Defendants, and each of them, were the agents, servants, employees, and joint venturers of each other, and were as such acting within the course, scope and authority of said agency and employment and or joint venture, and that each and every Defendant, when acting as a principal, was negligent and reckless in the selection, hiring, entrustment and supervision of each and every other Defendant as an agent, servant, employee, or joint venturer

10.

Defendants SAMSUNG SDI AMERICA, Inc. et al, LIVING VAPOR, LLC, SAMSUNG FIRE & MARINE INSURANCE CO, LTD,  AND JANE DOE/JOHN DOE (1-5), and XYZ CORPORATION (1-5) shall hereinafter be referred to as "Defendants."

## JURISDICTION AND VENUE

11.

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy is greater than $75,000, exclusive of interest and costs, and because there is complete diversity of citizenship among the parties.

12.

This Court has specific personal jurisdiction over the Defendants because a substantial portion of the wrongdoing alleged in this Complaint took place in Georgia, the Defendants are

authorized to do business in Georgia, the Defendants have minimum contacts with Georgia, and/or the Defendants otherwise intentionally availed themselves of the markets in Georgia through the promotion, marketing, distribution, and sale of their products in Georgia, each of which are sufficient bases to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

13.

Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial part of the events, acts and omissions giving rise to these claims occurred in the Northern District of Georgia, where Defendants LIVING VAPOR, LLC reside and are headquartered.

## FACTUAL BACKGROUND

### A. Background of E-Cigarettes

14.

Since their debut in the early 2000s, e-cigarettes have transformed into a multibillion-dollar industry dominated by major corporations. By 2008, sales were estimated at approximately $20 million, a figure that soared to $2.5 billion by 2014. Experts now predict that the e-cigarette market will continue to expand, potentially reaching a staggering $85 billion within the next decade, outpacing the growth of the traditional tobacco industry. However, this rapid expansion has also brought significant safety concerns, including reports of battery malfunctions and other injuries associated with e-cigarette use. The devices are composed of several components, including a rechargeable lithium-ion battery, a heating element known as an atomizer, a tank or cartridge to hold the liquid, and a mouthpiece for inhalation. While seemingly straightforward, the

design and manufacturing of these devices often lack sufficient safeguards, making them prone to malfunction (See Clarke, Toni, "Reports of e-cigarette injury jump amid rising popularity, United States data show," Reuters.com, April 17, 2014.

15.

E-cigarettes have gained widespread consumer appeal due to aggressive marketing campaigns and their positioning as a more affordable alternative to traditional smoking. Today, there are hundreds of e-cigarette brands competing in the market, utilizing unregulated advertising strategies that surpass the restrictions placed on tobacco products. These marketing efforts not only target current smokers but also entice non-smokers and minors who may otherwise never consider traditional cigarettes. The wide range of flavors, such as bubble gum, cotton candy, and root beer float, is particularly attractive to younger audiences. Unlike tobacco advertising, which has been banned from television and radio for over four decades, e-cigarette advertisements remain unrestricted, allowing them to reach a significantly broader demographic, including vulnerable populations such as minors.

16.

E-cigarettes owe much of their success to their broad consumer appeal. The industry markets an extensive array of enticing flavors—ranging from fruit and candy to dessert options which particularly attract younger users and those new to nicotine products. Additionally, e-cigarettes are promoted as sleek and modern alternatives to traditional tobacco products, appealing to tech-savvy consumers. Aggressive advertising, often featuring bright packaging and endorsements from social media influencers, has further solidified their place as a lifestyle product. Backed by traditional tobacco companies, e-cigarette manufacturers have capitalized on these strategies to build a rapidly growing and highly profitable market.

17.

E-cigarettes differ significantly from traditional cigarettes in their design and operation. Unlike traditional cigarettes, which lack electronic components, e-cigarettes are battery-operated devices that use a heating element to produce vapor. While both products may provide a similar physical sensation to the user, e-cigarettes present an additional and unique hazard—the risk of battery-powered malfunctions. Reports of e-cigarette batteries overheating, exploding, and causing severe injuries highlight the serious safety concerns associated with these devices. Under Georgia law, manufacturers and distributors have a duty to design and market safe products, as well as to warn consumers of potential dangers (Banks v. ICI Americas, Inc., 264 Ga. 732, 734 (1994)).

18.

Despite their commercial success, e-cigarettes are plagued by significant safety concerns, many of which stem from poor design and manufacturing defects. Reports of devices overheating or exploding due to faulty lithium-ion batteries are widespread, resulting in serious injuries. For example, one man suffered severe burns when his e-cigarette device exploded in his pocket. Furthermore, the chemical composition of the vaporized liquid can expose users to harmful substances, particularly when the device malfunctions. These incidents underscore the dangers associated with products that are often manufactured with limited oversight or attention to safety.

19.

Lithium-ion batteries are mostly used in e-cigarettes and have posed significant dangers due to their susceptibility to fires and explosions. These risks are heightened when paired with a heating element, as seen in numerous reported incidents. One notable case involved a New Jersey man who sustained severe burns after an e-cigarette exploded in his pocket, highlighting the devastating potential of such malfunctions. Experts attribute these failures to factors such as poor design, low-quality materials, manufacturing defects, and improper handling, all of which can lead

to "thermal runaway"—a condition where the battery's internal temperature spirals out of control, causing fires or explosions. A 2015 study published in the *American Journal of Medical Case Reports* cautions that as the e-cigarette market continues to grow, so too will the likelihood of serious burn injuries caused by defective devices. In Georgia, courts have consistently held that manufacturers are obligated to anticipate foreseeable risks and ensure consumer safety, as established in *Jones v. NordicTrack, Inc., 274 Ga. 115 (2001)*.

20.

Despite these significant risks, e-cigarettes remain largely unregulated in many respects, particularly regarding design and safety testing. Unlike traditional tobacco products, which are subject to extensive scrutiny, e-cigarettes entered the market with minimal oversight. This lack of regulation has allowed manufacturers, particularly those operating overseas in countries like South Korea, to continue producing and distributing these devices without adhering to strict safety standards. The ongoing production of these devices raises concerns about their quality and safety, especially as debates persist over whether e-cigarettes are genuinely safer alternatives to traditional tobacco products. While some proponents argue that they reduce harm for smokers transitioning away from combustible cigarettes, critics highlight the lack of long-term studies and the alarming rate of injuries and malfunctions. This unresolved debate underscores the urgent need for stricter regulations and comprehensive safety testing.

21.

Currently, there are very few federal regulations concerning e-cigarettes. Although the United States Department of Transportation and the Food and Drug Administration have taken initial steps to regulate certain aspects of e-cigarettes, these measures do not address the safety of

the devices themselves. As it stands, e-cigarettes are not subject to any established manufacturing or quality control standards at the federal, state, or local levels.

22.

E-cigarettes are particularly hazardous compared to other products containing lithium batteries due to their cylindrical design. If the device malfunctions or fails, the battery can eject forcefully, behaving like a projectile or rocket. Battery explosions, particularly in lithium-ion batteries, are a common hazard due to their high energy density and widespread use in devices like e-cigarettes, smartphones, and laptops. These incidents typically occur due to a phenomenon called thermal runaway, where internal overheating—triggered by damage, manufacturing defects, improper charging, or exposure to high temperatures—causes a chain reaction of escalating heat and chemical instability. This process generates gas buildup inside the battery, and if the pressure exceeds the casing's limits, the battery can rupture violently, releasing flammable gases that may ignite and explode. There are various methods to safeguard against these battery risks, but due to the lack of regulation, implementing such protection is left entirely to the discretion of e-cigarette manufacturers. (Source: United States Fire Administration, "Electronic Cigarette Fires and Explosions," p. 6).

23.

The explosion of Plaintiff's e-cigarette battery is not an isolated incident; e-cigarettes batteries have been linked to numerous fires and explosions that have caused significant injuries to consumers.

24.

Reports of injuries caused by e-cigarettes continue to increase as these devices gain popularity. Despite their inherent risks, e-cigarettes are still being distributed and sold without

adequate testing or safety measures. Unless those responsible for introducing these products into the marketplace are held accountable, such injuries will persist. The incident involving the Plaintiff illustrates the urgent need for change.

### B. The Explosion that Changed Dalvis Knox's Life

25.

In 2022, Plaintiff purchased the e-cigarette and components consisting of a lithium-ion battery, a lithium-ion battery charger, and a mod and accessories from the Defendants Living Vapor, LLC. These products will be collectively referred to herein as the "E-Cig Products."

26.

The E-Cig Products were manufactured, wholesaled, distributed, and retailed by Defendants, Samsung SDI AMERICA, Inc. et al.

27.

On December 26, 2022, Plaintiff, while driving, suddenly his Samsung 25R 18650 battery to his e-cigarette exploded while in his coat pocket. The Samsung 25R 18650 battery was not in use or connected to a device.

28.

The explosion caused Plaintiff's coat to catch fire, resulting in second-degree burns to his body. Plaintiff nearly experienced a car accident while attempting to stop and exit his vehicle.

29.

The explosion and Plaintiff's resulting injuries were caused by the defective E-Cig Products, as well as the Defendants' negligence

30.

The battery was identified as a Samsung 25R 18650; a 2500mAh, 20A lithium-ion battery, commonly used in vape devices.

## FIRST CLAIM FOR RELIEF

### Strict Product Liability: Design Defect

31.

Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though set forth in full in this claim for relief.

32.

At all times mentioned herein, Defendants were engaged in the business of manufacturing, fabricating, designing, assembling, distributing, selling, inspecting, warranting, leasing, renting, retailing, who wholesaling, and advertising the E-Cig Products purchased and used.

33.

On December 26, 2022, as Plaintiff was using the E-Cig Products and its component parts in a reasonably foreseeable and intended manner, the E-Cig Products suddenly exploded, causing his severe injuries.

34.

Defendants knew that consumers would use the E-Cig Products as Plaintiff did on December 26, 2022.

35.

Defendants manufactured, designed, assembled, packaged, tested, fabricated, inspected, marketed, distributed, and sold the E-Cig Products and each of their component parts with defects

in design which made them dangerous, hazardous, and unsafe for their intended and reasonably foreseeable use.

36.

The design defects in the E-Cig Products and its component parts included defective and unsafe characteristics, which resulted in excessive overheating of the E-Cig Products, causing them to catch fire during intended use and in the course of non-use.

37.

The E-Cig Products contained design defects when the E-Cig Products were introduced into the stream of commerce by Defendants.

38.

The E-Cig Products were defective and unsafe for their intended use. Due to the design defects, the E-Cig Products failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

39.

Furthermore, the risk of danger in the design of the E-Cig Products outweighed any benefits of the design, and safer alternative designs were available at the time of manufacture. Therefore, the E-Cig Products presented a substantial and unreasonable risk of serious injuries to users of said E-Cig Products or those in the vicinity of use.

40.

The defects in the design of the E-Cig Products and its component parts were a substantial factor in causing Plaintiff's severe injuries, and Plaintiff's damages as herein alleged.

41.

As a result of the defective E-Cig Products, Plaintiff sustained severe personal injuries and died, and Plaintiff suffered damages, as alleged herein:

A. Plaintiff suffered great mental, physical, and emotional pain, in sums according to proof at the time of trial;

B. Plaintiff incurred medical, property damage, and other damages, in sums according to proof at the time of trial;

C. Plaintiff incurred economic losses including past and future loss of earnings and diminished earning capacity, in an amount according to proof at the time of trial.

42.

Defendants are strictly liable to Plaintiff for the injuries complained of herein by reason of having sold and placed into the stream of commerce defective E-Cig Products, including but not limited to mods, batteries, and chargers, which were unreasonably dangerous to users.

43.

WHEREFORE, Plaintiff demands judgment for damages generally against the Defendants, individually, jointly, severally, or in the alternative, in excess of the jurisdictional limitations of this Court, together with interest and costs of suit.

## SECOND CLAIM FOR RELIEF

### Strict Product Liability: Failure to Warn

44.

Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though set forth in full in this claim for relief.

45.

At all times mentioned herein, Defendants were engaged in the business of manufacturing, fabricating, designing, assembling, distributing, selling, inspecting, warranting, leasing, renting, retailing, wholesaling, and advertising the E-Cig Products Plaintiff purchased and used.

46.

On December 26, 2022, as Plaintiff was using the E-Cig Products in a reasonably foreseeable and intended manner, the E-Cig Products suddenly exploded, causing him severe burns to his body.

47.

Defendants knew that consumers would use the E-Cig Products as Plaintiff did on December 26, 2022.

48.

An ordinary consumer, such as Plaintiff, would not have recognized the potential risks and dangers inherent in the E-Cig Products.

49.

Defendants failed to warn of the dangers in the reasonably foreseeable use of the E-Cig Products.

50.

Defendants' failure to warn of the risks, and lack of instructions on safe use, were a substantial factor in causing Plaintiff's severe injuries and damages as herein alleged.

51.

As a result of Defendants' failure to warn, Plaintiff sustained severe personal injuries, and Plaintiff suffered damages, as alleged herein:

a) Plaintiff suffered great mental, physical, and emotional pain, in sums according to proof at the time of trial;

b) Plaintiff incurred medical, property damage, and other damages, in sums according to proof at the time of trial;

c) Plaintiff suffered non-economic damages;

d) Plaintiff incurred economic losses including future loss of earnings and diminished earning capacity, in an amount according to proof at the time of trial.

## **THIRD CLAIM FOR RELIEF**

**Negligence**

52.

Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though set forth in full in this cause of action.

53.

Defendants negligently, recklessly, and carelessly manufactured, fabricated, designed, assembled, distributed, sold, inspected, warranted, and advertised the E-Cig Products such that they were dangerous and unsafe for their intended and/or reasonably foreseeable use.

54.

Defendants owed a duty to Plaintiff to exercise reasonable care in the design, manufacture, and sale of the E-Cig Products, to ensure the E-Cig Products were safe for their reasonably foreseeable use.

55.

Defendants failed to exercise the amount of care in the design, manufacture, and sale of the E-Cig Products, that a reasonably careful manufacturer, designer, seller, wholesaler, or distributor would have used in similar circumstances to avoid exposing others to a foreseeable risk of harm.

56.

Defendants knew or reasonably should have known that the E-Cig Products were dangerous when used or misused in a reasonably foreseeable manner.

57.

Defendants knew or reasonably should have known that users would not realize the danger of explosion and/or fire.

58.

Defendants failed to adequately warn of the dangers of explosion and/or fire, or instruct on the safe use of the E-Cig Products.

59.

A reasonable manufacturer, designer, seller, wholesaler, or distributor in similar circumstances would have warned of the danger or instructed on safe use of the product.

60.

Defendants' failure to warn or instruct was a substantial factor in causing Plaintiffs injuries.

61.

As a proximate result of said negligent conduct, Plaintiff suffered injuries as previously alleged. The negligence of Defendants was a substantial factor in causing the explosion, and serious injuries, to Plaintiff as previously alleged.

62.

Plaintiff incorporates by reference the damage allegations of all paragraphs alleged against Defendants, as though fully set forth herein.

63.

WHEREFORE, Plaintiff demands judgment for damages generally against the Defendants, individually, jointly, severally, or in the alternative, in excess of the jurisdictional limitations of this Court, together with interest and costs of suit

## FOURTH CLAIM FOR RELIEF

**Breach of Implied Warranty of Merchantability**

64.

Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

65.

Prior to the time of the subject incident, the Defendants impliedly warranted to members of the general public, including Plaintiff, that the E-Cig Products were of merchantable quality.

66.

Members of the consuming public, including consumers such as Plaintiff, were intended third-party beneficiaries of the implied warranty of merchantability.

67.

Plaintiff relied on the skill and judgment of Defendants in the purchase, selection, and use of the E-Cig Products as a safe consumer product.

68.

The subject E-Cig Products were not of merchantable quality as warranted by Defendants, in that they were defectively designed, thereby dangerously exposing the users of said products and those around them to serious injuries.

69.

After Plaintiff received the injuries complained of herein, notice was given by Plaintiff to Defendants, by filing this lawsuit in the time and in the manner and in the form prescribed by law, of the breach of said implied warranty.

70.

As a legal and proximate result of the breach of said implied warranty, Plaintiff sustained the damages herein set forth.

71.

Plaintiff is, therefore, entitled to damages in an amount to be proven at the time of trial.

72.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests of this Court the following relief:

A. For general damages, in an amount to be proven at the time of trial;

B. For medical, incidental, hospital, psychological care, and other expenses, in an amount to be proven at the time of trial;

C. For property damage and property loss;

D. For loss of earnings and/or earning capacity, in an amount to be proven at the time of trial;

E. For an award of pre-judgment and post-judgment interest as provided by law;

H. For consequential damages, in an amount to be proven at the time of trial;

I. For an award providing for payment of costs of suit;

J. For such other and further relief as this Court may deem just and

Respectfully submitted this 21st day of December, 2024.

                              **THE KUBANYI LAW FIRM, LLC**

                              /s/ *Sherry Kubanyi*
                              Sherry Kubanyi, Esq.
                              Georgia State Bar No. 614654

2990 Hardman Court NE
Atlanta, GA 30305
P: (404) 965-7112
F: (404) 919-7029
sherry@kubanyifirm.com
**Counsel for Plaintiff**

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues that may be tried by on all issues that may be tried by a jury.

Respectfully submitted this 21st day of December, 2024.

THE KUBANYI LAW FIRM, LLC

/s/ *Sherry Kubanyi*
Sherry Kubanyi, Esq.
Georgia State Bar No. 614654

2990 Hardman Court NE
Atlanta, GA 30305
P: (404) 965-7112
F: (404) 919-7029
sherry@kubanyifirm.com
**Counsel for Plaintiff**